UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

Patrick Lenhard and Ann Lenhard,

                                                    Plaintiffs,


          -v.-                                                    1:08-CV-00165
                                                                 (NPM/RFT)

Eric R. Dinallo, Philip J. D'Angelo,
and Sean M. Ralph,

                                                    Defendants.


APPEARANCES:                              OF COUNSEL:

FOR THE PLAINTIFF:

Linnan & Fallon, LLP                      James D. Linnan
61 Columbia Street
Suite 300
Albany, NY 12210-2736

FOR THE DEFENDANTS:

Andrew M. Cuomo, Attorney General         Adrienne J. Kerwin, Assistant
 of the State of New York                  Attorney General
The Capitol
Albany, NY 12224-0341


Neal P. McCurn, Senior District Judge

## _Memorandum, Decision and Order_

## _I.  Introduction_

          Presently before the court is a motion by all defendants to dismiss the

amended complaint for failure to state claims upon which relief may be granted pursuant to Federal Rule of Civil Procedure 12(b)(6).  Plaintiffs, Patrick Lenhard and Ann Lenhard ("Plaintiffs"), commenced this civil rights action against defendants, Eric R. Dinallo, Philip J. D'Angelo, and Sean M. Ralph ("Defendants"), seeking relief for, among other things, the alleged violation of Plaintiffs' right to be free from unreasonable seizure under the Fourth Amendment to the United States Constitution stemming from Plaintiffs' arrest for insurance fraud in March 2007.  Defendants are employees of the New York State Insurance Department, which is not a party to this action.

## *II.  Background*

For purposes of deciding a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), the court will, as it must, accept the following allegations of fact in the amended complaint as true, drawing all reasonable inferences in Plaintiffs' favor. See World Religious Relief, Inc. v. Sirius Satellite Radio, Inc., No. 05-CV-8257, 2007 WL 2261549, at *1 (S.D.N.Y. Aug. 7, 2007) (quoting Hernandez v. Coughlin, 18 F.3d 133, 136 (2d Cir.1994)).

Plaintiffs, who are currently residents of the Province of British Columbia, Canada, previously owned a home in Clinton County within the State of New York.  When that home was destroyed by fire, Plaintiffs filed a claim, including a sworn statement and proof of loss ("the proof of loss"), with their insurance carrier, Genesee Patrons Cooperative Insurance Company ("the insurance company").[1]  Subsequently, Plaintiffs were notified by the insurance company of

---

[1] In one paragraph of the amended complaint, Plaintiffs refer to the Genesee Patrons Cooperative Insurance Company as a defendant.  See Am. Compl. ¶12.  However, Plaintiffs have not identified the insurance company as a defendant in the caption of the amended complaint, nor

an apparent discrepancy in the proof of loss.  Shortly thereafter, an employee of the insurance company took a statement from a third party, Jody N. Speer, regarding tools he purchased from Ann Lenhard at the home she owned in Clinton County, prior to its destruction by fire ("the Speer Affidavit").  Eventually, Plaintiffs' claim was denied, and Plaintiffs thereafter filed a civil action against the insurance company in state court.

Representatives of the insurance company provided the Fraud Unit of the New York State Insurance Department ("NYSID") with copies of the Speer Affidavit as well as the proof of loss executed by Plaintiffs.  Defendant, Philip J. D'Angelo ("D'Angelo"), a law enforcement official employed by the NYSID, informed Ann Lenhard's attorney that he was considering filing insurance fraud charges against her and inquired whether she would surrender herself and plead to a misdemeanor in full satisfaction of the charges.[2]  Ann Lenhard's attorney thereafter declined a plea of guilty on behalf of his client, but informed D'Angelo that she would be willing to face any charges, and further informed D'Angelo that he was retained to represent Ann Lenhard, and all future communication regarding the criminal matter should be directed to him.  The District Attorney's Office for the County of Clinton was also notified that both Ann and Patrick Lenhard were represented by counsel, and that Ann Lenhard would surrender herself for arrest regarding any charges which may be brought against her.

---

has the insurance company been served.  See Dkt. Nos. 1, 19.  Therefore, it is apparent that the insurance company is not a defendant in this action and the court will proceed with its analysis of the present motion accordingly.

[2] The amended complaint is silent regarding D'Angelo's basis for fraud charges against Plaintiffs.

Approximately four months later, D'Angelo filed sworn informations with the Altoona Town Court charging Plaintiffs with insurance fraud. The bases for the informations were the Speer Affidavit and the proof of loss. D'Angelo did not notify Plaintiffs or their attorney that the informations had been filed. Almost three months after the informations were filed, at the request of D'Angelo, the Altoona Town Justice issued warrants for Plaintiffs' arrests. Plaintiffs' attorney was not informed that arrest warrants had been issued for his clients, despite his repeated calls to the Clinton County District Attorney, Andrew J. Wylie, wherein Plaintiffs' attorney left unanswered messages identifying himself as counsel for Ann Lenhard.

Attached to Plaintiffs' opposition memorandum of law is the arrest warrant, which includes the informations filed by D'Angelo, charging Plaintiffs with several felonies, including insurance fraud and falsifying business records. Also attached to the warrant are the proof of loss and Speer Affidavit. According to the Speer Affidavit, Mr. Speer  purchased some tools from Ann Lenhard on February 2, 2001. The proof of loss indicates that the Plaintiffs claimed a loss of property valued at approximately $57,000 stemming from a fire at their residence, which occurred on February 10, 2001.

After more than four additional months passed, Plaintiffs were notified by authorities in Canada that charges were pending against them in the United States. Plaintiffs contacted their attorney, who contacted the District Attorney and learned that an arrest warrant was pending in the Town of Altoona. Plaintiffs thereafter made arrangements for a voluntary surrender to the Altoona Town Court, which was communicated to D'Angelo as well as to the District Attorney's office.

4

On March 27, 2007, Plaintiffs arrived, via a commercial airline, at the Albany International Airport.  Before arriving at the gate, the airplane, which was occupied by Plaintiffs and their fifteen-year-old daughter, was delayed on the tarmac.  Representatives of the New York State Police Department boarded the airplane and escorted Plaintiffs therefrom with loaded firearms, parading them across the tarmac to a holding area within the airport.  These members of the State Police were acting in concert with, and under the supervision of, defendant Sean M. Ralph, Deputy Chief Investigator of the NYSID Fraud Unit ("Ralph").  In fact, Ralph specifically directed that the Plaintiffs were to be separated from their fifteen-year-old daughter, who was to be held under armed guard in a separate area of the airport for an extended period of time.[3]  Ralph was also D'Angelo's supervisor, and was intimately aware of D'Angelo's activities regarding the investigation of Plaintiffs as well as the inadequacies of said investigation.

Ralph threatened Patrick Lenhard that if he did not fully cooperate, an armed SWAT team would be brought in, and Mr. Lenhard would be thrown face down, handcuffed, and guns would be placed to his head.  Ralph further advised Plaintiffs that their attorney was responsible for their arrest at the airport, that they should not speak to their attorney, and that they should speak only to D'Angelo so that everything could be worked out amicably.

D'Angelo continued to press questions to Plaintiffs, despite being told by Plaintiffs that they were represented by counsel, and that they wished to speak to their attorney before speaking to law enforcement.

Neither the Clinton County District Attorney's Office nor the Altoona Town

---

[3] Plaintiffs' daughter is not a party to this action.

Justice were advised that Plaintiffs would be arrested upon arrival at the airport. After the Town Justice directed that Plaintiffs be released and allowed to travel to Altoona on their own to surrender themselves to the Court, Plaintiffs were released from custody of the State Police. Despite his awareness of the Town Justice's order, D'Angelo attempted to persuade the State Police to retain custody of Plaintiffs.

After voluntarily surrendering themselves to the Altoona Town Court, Plaintiffs were arraigned and released on their own recognizance. Four months later, all criminal charges against Plaintiffs were dismissed by the Town Justice. In the interim, D'Angelo and Ralph prevented dismissal of the charges against Plaintiffs by lobbying heavily against same with the District Attorney's office, despite their awareness of the procedural and factual deficiencies in the case. Also, in the interim, a settlement was reached in the civil action between Plaintiffs and the insurance company.

D'Angelo and Ralph, experienced law enforcement officers, knew or should have known that the bases for the informations filed against Plaintiffs, and thus the criminal prosecution of Plaintiffs, would not withstand judicial scrutiny. Specifically, the Speer Affidavit was taken by a representative of the insurance company, and Mr. Speer was not thereafter interviewed by D'Angelo. In fact, D'Angelo did not interview any witnesses prior to the filing of the informations, despite his and Ralph's knowledge that protracted discovery had been completed in the civil action between Plaintiffs and the insurance company, which included the depositions of numerous witnesses.

In order to defend against the criminal charges, Plaintiffs were required to

retain counsel and incurred substantial expenses.  Plaintiffs' ability to travel within the United States was restricted, and they were prevented from returning to their home in Canada.

At all times relevant to this action, defendant Eric R. Dinallo ("Dinallo") supervised, oversaw, endorsed and condoned the investigation practices of defendants D'Angelo and Ralph.

Based on the foregoing, Plaintiffs assert claims of false arrest and deprivation of due process in violation of their Fourth Amendment rights against defendants D'Angelo and Ralph; a claim for false arrest under the Constitution of the State of New York and New York common law against D'Angelo and Ralph; a malicious prosecution claim under New York common law against D'Angelo and Ralph; and claims against defendant Dinallo under § 1983 as well as New York common law.

## III.  Discussion

### A.  Legal Standard

As previously mentioned, when deciding a Rule 12(b)(6) motion to dismiss, the court must accept the allegations of fact in the complaint as true, drawing all reasonable inferences in plaintiffs' favor.  See supra, at 2.  When deciding such a motion, the court may only consider "the factual allegations in the complaint, [...] documents attached to the complaint as exhibits or incorporated by reference, [...] matters of which judicial notice might be taken, and [...] documents either in plaintiff[s'] possession or of which plaintiffs had knowledge and relied on in bringing suit."  Muller-Paisner v. TIAA, 446 F.Supp.2d 221, 226-227 (S.D.N.Y.2006) (citing Brass v. American Film Technologies, Inc., 987 F.2d 142, 150 (2d Cir.1993) (internal citations omitted)) (rev'd in part on other grounds, No.

06-4307-cv, 2008 WL 3842899 (2d Cir. Aug. 15, 2008).

A motion to dismiss pursuant to Rule 12(b)(6) may not be granted so long as the complaint includes "enough facts to state a claim to relief that is plausible on its face." <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544, 127 S.Ct. 1955, 1974 (2007).[4]  The Court of Appeals for the Second Circuit has interpreted the foregoing language to require that lower courts apply "a flexible 'plausibility standard,' which obliges a pleader to amplify a claim with some factual allegations in those contexts where such amplification is needed to render the claim plausible [,]" but does not require a heightened pleading standard for civil rights claims. <u>Iqbal v. Hasty</u>, 490.3d 143, 157-58 (2d Cir.2007) (emphasis in original).  In accordance with this standard, the plaintiff is required, "at a bare minimum, . . . [to] provide the grounds upon which his claim rests through factual allegations sufficient 'to raise a right to relief above the speculative level.'" <u>Goldstein v. Pataki</u>, 516 F.3d 50, 56-57 (2d Cir. 2008) (<u>citing</u> <u>ATSI Commc'ns., Inc. v. Shaar Fund, Ltd.</u>, 493 F.3d 87, 98 (2d Cir. 2007)) (<u>quoting</u> <u>Twombly</u>, 127 S.Ct. at 1965))).

Here, Defendants first argue that Plaintiffs fail to state a claim for false arrest because Plaintiffs were arrested subject to a valid warrant, and thus probable cause, which is a complete defense to a false arrest claim, is presumed. Defendants further argue that Plaintiffs fail to state a due process claim, as no such

---

[4] By its opinion in <u>Bell Atlantic</u>, the Supreme Court recently abrogated the often-cited language of <u>Conley v. Gibson</u>  "that a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."  550 U.S. 544, ----, 127 S.Ct. 1955, 1968 (2007) (quoting <u>Conley</u>, 355 U.S. 41, 45-46, 78 S.Ct. 99 (1957)).  In doing so, the Court found that <u>Conley</u> "described the breadth of opportunity to prove what an adequate complaint claims, not the minimum standard of adequate pleading to govern a complaint's survival."  <u>Id.</u>, at 1969.

claim is cognizable under the Fourth Amendment.  Finally, Defendants argue that the claims against Dinallo must be dismissed because (1) he may not be held liable on Plaintiffs' § 1983 claims under the doctrine of respondeat superior, (2) only employers, not supervisors as is Dinallo, may be held liable under New York state common law under the doctrine of respondeat superior, and (3) Plaintiffs allege no personal involvement on behalf of Dinallo in the events underlying their claims.[5]

Plaintiffs' arguments in opposition will be discussed in turn.  Initially, however, a procedural issue is raised by Defendants regarding Plaintiffs having filed an exhibit to their memorandum of law in opposition to the pending motion to dismiss, which includes the arrest warrant and the attachments thereto, to wit, the informations, Speer Affidavit and proof of loss.  Defendants argue that these exhibits may not be considered by the court because when deciding a motion to dismiss the court may only consider the allegations in the complaint.  As previously noted, however, the court may also consider "documents attached to the complaint as exhibits or incorporated by reference, [...] matters of which judicial notice might be taken, and [...] documents either in plaintiff[s'] possession or of which plaintiffs had knowledge and relied on in bringing suit."  Supra, at 7, citing Muller-Paisner, 446 F.Supp.2d at 226-227.  The exhibits at issue here are certainly incorporated by reference in Plaintiffs' amended complaint.  Moreover, they also may be considered as documents in Plaintiffs' possession or upon which they had knowledge and relied on in bringing suit.  Accordingly, the court will consider the exhibits to Plaintiffs' opposition memorandum of law in deciding the present

_____

[5] Defendants make no argument seeking dismissal of Plaintiffs' malicious prosecution claim.

9

motion.

### B.  False Arrest Claims

Plaintiffs allege a claim of false arrest against D'Angelo and Ralph in violation of the Fourth Amendment; Article I, § 12 of the New York State Constitution; and New York common law.  Analysis of Plaintiffs' false arrest claim is the same under the Fourth Amendment right to be free from unreasonable seizures as well as New York constitutional and common law.  See Martinez v. City of New York, No. 06-Civ.-5671, 2008 WL 2566565, at *2 (S.D.N.Y. June 27, 2008) (citing Boyd v. City of New York, 336 F.3d 72, 75 (2d Cir. 2003)).  See also Vilkhu v. City of New York, No. 06-Civ.-2095, 2008 WL 1991099, at *1 (E.D.N.Y. May 5, 2008).  In order to survive a motion to dismiss a claim for false arrest under § 1983 and New York law, a plaintiff must allege that the defendant intentionally confined her without her consent and without justification.  See Weyant v. Okst, 101 F.3d 845, 852 (2d Cir. 1996).

Probable cause is a justification for, and a complete defense to, a claim for false arrest under both § 1983 and New York law.  See Weyant, 101 F.3d at 852.  "Ordinarily, an arrest . . . pursuant to a warrant issued by a neutral magistrate is presumed reasonable because such warrants may issue only upon a showing of probable cause."  Walczyk v. Rio,  496 F.3d 139, 156 (2d Cir. 2007) (citations omitted).  However, such a presumption will be overcome where "the issuing magistrate was . . .  misled into finding probable cause by material omissions for which defendants were knowingly or recklessly responsible."  Id. (citations omitted).

"[P]robable cause to arrest exists when the officers have knowledge or reasonably trustworthy information of facts or circumstances that are sufficient to

warrant a person of reasonable caution in the belief that the person to be arrested has committed or is committing a crime." Weyant, 101 F.3d at 852.  An officer may rely on the victim's allegations.  See Shain v. Ellison, 273 F.3d 56, 67-68 (2d Cir. 2001).  Moreover, neither a subsequent  dismissal of charges or acquittal of the accused are evidence that probable cause did not exist.  See Weyant, 101 F.3d at 852.

Here, Defendants argue that Plaintiffs cannot state a claim for false arrest because the arrests herein were made pursuant to a valid warrant, and thus are presumptively justified.  Plaintiffs counter that the arrest warrants here were improperly procured as Defendants knowingly and intentionally, or with reckless disregard for the truth, made false statements or omitted material facts when obtaining said warrants.

Plaintiffs allege D'Angelo "obtained warrants of arrest for [Plaintiffs] by the filing of documents that he knowingly and intentionally, or with reckless disregard for the truth made false statements therein or, that in initiating the prosecution and obtaining the warrants of arrest he omitted material facts from the documents which were filed with the court."  Am. Compl. ¶ 74.  See also ¶ 79.  Plaintiffs further allege that Ralph "knew or should have known of the actions of . . . D'Angelo, and failed to prevent the unlawful arrest of [Plaintiffs], and in fact encouraged same."  Id. ¶ 81.  See also ¶¶ 75-76.

Significantly, Plaintiffs allege that D'Angelo relied solely on the proof of loss and Speer Affidavit in support of his charge of insurance fraud against them. See ¶ 53.  The proof of loss merely indicates that Plaintiffs claimed a property loss of approximately $57,000 from the destruction of their home by fire.  The Speer Affidavit indicates only that Mr. Speer purchased certain tools from Ann Lenhard

11

approximately one week before said fire.  Based on the contents of those documents, there is no probable cause to believe that Plaintiffs committed insurance fraud, or any other crime.  Thus, Plaintiffs have sufficiently alleged enough facts to overcome the presumption of probable cause based on an arrest pursuant to a valid warrant.  Accordingly, Defendants' motion to dismiss Plaintiffs' false arrest claims against D'Angelo and Ralph is denied.

### *C.  Due Process*

Defendants argue that pursuant to Albright v. Oliver, 510 U.S. 266, 275, 114 S.Ct. 807, 814 (1994) pretrial deprivations of liberty are governed by the Fourth Amendment, not the Fourteenth Amendment, and therefore, Plaintiffs cannot state a due process claim based on the facts alleged in the amended complaint.  Plaintiffs oppose, without supporting legal authority.

In the amended complaint, Plaintiffs allege that "[t]he actions of the arresting officer . . . D'Angelo and . . . Ralph violated [Plaintiffs'] right to due process under the Fourth Amendment to the United States Constitution."  Am. Compl. ¶ 92.  Plaintiffs are silent as to which specific actions they refer, however, the allegations in the amended complaint detail Defendants' actions surrounding Plaintiffs' arrest, detention and release, all of which occurred on the same day. Accordingly, Plaintiffs' alleged deprivation of liberty is more appropriately analyzed pursuant to the Fourth Amendment's protection against unreasonable searches and seizures rather than the Fourteenth Amendment's protection against deprivations of substantive due process rights.  See Russo v. City of Bridgeport, 479 F.3d 196, 208 (2d Cir. 2007) (citing Albright, 510 U.S. at 273, 114 S.Ct. 807 (quoting Graham v. Connor, 490 U.S. 386, 395, 109 S.Ct. 1865 (1989)).

To be sure, Plaintiffs have already stated a Fourth Amendment unreasonable

seizure claim related to their arrest.  To the extent they purport to state an additional claim challenging the length of their detention, they have failed to do so.  A detention of short duration, as is alleged here, does not carry constitutional implications.  Cf. Russo, 479 F.3d at 209.  Accordingly, Defendants' motion to dismiss Plaintiffs' purported "due process" claim set forth in Count IV of the amended complaint is granted.

### D.  Claims Against Dinallo

Finally, Defendants seek dismissal of Plaintiffs' claim against Dinallo based on respondeat superior liability, which Defendants contend is set forth in Count V of the amended complaint.  Plaintiffs, for their part, argue in their opposition papers that Defendants fail to seek dismissal of their respondeat superior claim against Dinallo in Count VI of the amended complaint.

It is clear that Plaintiffs allege that Dinallo is liable on their § 1983 claims (set forth in Count V of the amended complaint) as well as their state common law claims under a theory of respondeat superior (set forth in Count VI of the amended complaint).  Plaintiffs correctly point out that pursuant to Monell v. Department of Social Services of the City of New York, 436 U.S. 658, 694-95, 98 S.Ct. 2018, 2037-38 (1978), respondeat superior liability is not available on a § 1983 claim. It is true that in Monell, the Supreme Court held that a municipal entity may not liable pursuant to § 1983 under the theory of respondeat superior, but may be liable where its employee acted pursuant to an official policy, custom, or practice of said entity.  See Monell, 436 U.S. at 694-95, 98 S.Ct. at 2037-38.  Plaintiffs' theory of Dinallo's § 1983 liability does not rely on Monell, however.  Instead, Plaintiffs allege that Dinallo personally oversaw, endorsed and condoned the actions of his subordinates, D'Angelo and Ralph, and that he caused and

13

participated in the deprivation of Plaintiffs' constitutional rights by failing to supervise or discipline his investigators and by "turning a blind eye" to their misconduct.  See Am. Compl. ¶¶ 95-97.  Plaintiffs further allege that Dinallo was deliberately indifferent to the rights of Plaintiffs.  See id. ¶ 98.

In order to establish a § 1983 claim against a government official in his individual capacity, a plaintiff need only "show that the official, acting under color of state law, caused the deprivation of a federal right."  Hafer v. Melo, 502 U.S. 21, 25, 112 S.Ct.358, 362 (1991) (quoting Kentucky v. Graham, 473 U.S. 159, 166, 105 S.Ct. 3099, 3105 (1985)).

A prerequisite to an award of damages on a § 1983 claim against an individual is personal involvement in the alleged constitutional deprivation.  See Farrell v. Burke, 449 F.3d 470, 484 (2d Cir. 2006) (citing Wright v. Smith, 21 F.3d 496, 501 (2d Cir.1994) (abrogated on other grounds, Sandin v. Conner, 515 U.S. 472, 115 S.Ct. 2293 (1995))).  A plaintiff may establish the personal involvement of a defendant-supervisor by showing that he "(1) directly participated in the violation, (2) failed to remedy the violation after being informed of it by report or appeal, (3) created a policy or custom under which the violation occurred, (4) was grossly negligent in supervising subordinates who committed the violation, or (5) was deliberately indifferent to the rights of others by failing to act on information that constitutional rights were being violated."  Iqbal , 490 F.3d at 152-53 (citing Colon v. Coughlin, 58 F.3d 865, 873 (2d Cir.1995)).

Here, Plaintiffs allege that not only was Dinallo aware of the actions of D'Angelo and Ralph, he encouraged and condoned those actions.  Plaintiffs further allege that Dinallo was deliberately indifferent to Plaintiffs' constitutional

14

rights and that he failed to supervise D'Angelo and Ralph.  Thus, to the extent Defendants seek dismissal of Plaintiffs' § 1983 claim against Dinallo, their motion is denied as the allegations in the amended complaint sufficiently state such a claim.

Regarding Plaintiffs' respondeat superior claim against Dinallo, Defendants are correct that such liability is only available on claims against employers, not supervisors.  See Yaniv v. Taub, 683 N.Y.S.2d 35, 38, 256 A.D.2d 273, 274-275, (N.Y. App. Div. 1998).  Accordingly, Count VI of the amended complaint, a purported claim against Dinallo for the New York common law torts of false arrest and malicious prosecution on a theory of respondeat superior liability, is dismissed.

### IV.  Conclusion

In accordance with the foregoing discussion, it is ORDERED that Defendants' motion to dismiss Plaintiffs' amended complaint, see Dkt. No. 20, is GRANTED in part and DENIED in part.


IT IS SO ORDERED.

DATED:    March 31, 2009
          Syracuse, New York



_____
Neal P. McCurn
Senior  U.S. District Judge

15