UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

═══════════════════════════════════════

Patrick Lenhard and Ann Lenhard,

                                        Plaintiffs,

          -v.-                                        1:08-cv-00165

Eric R. Dinallo, Philip J. D'Angelo,
and Sean M. Ralph,

                                        Defendants.

═══════════════════════════════════════

APPEARANCES

OFFICE OF DENNIS B. SCHLENKER        DENNIS B. SCHLENKER, ESQ.
*Attorney for Plaintiffs*
174 Washington Avenue
Albany, NY 12210


ERIC T. SCHNEIDERMAN                 ADRIENNE J. KERWIN, ESQ.,
ATTORNEY GENERAL OF                  Assistant Attorney General
THE STATE OF NEW YORK
*Attorneys for Defendants*
The Capitol
Albany, NY 12224-0341


NEAL P. MCCURN, Senior District Judge

### *Memorandum, Decision, and Order*

## *I.  Introduction*

        Presently before the court in this civil rights action is a motion by defendants

for summary judgment pursuant to Rule 56 of the Federal Rules of Civil

Procedure.  Plaintiffs oppose the motion.  Decision on the pending motion is based entirely on the submitted papers, without oral argument.  For the reasons that follow, defendants' motion is GRANTED.

## II.  Background

Plaintiffs are Patrick Lenhard and Ann Lenhard (collectively "Plaintiffs").  They bring this civil rights action pursuant to 42 U.S.C. § 1983, alleging claims under the United States Constitution as well as the New York State constitution and common law, stemming from their arrest for insurance fraud in March 2007.  Defendants are Philip J. D'Angelo ("D'Angelo"), Sean M. Ralph ("Ralph"), and Eric R. Dinallo ("Dinallo") (collectively "Defendants").  Defendants are employees of the New York State Insurance Department ("NYSID"), which is not a party to this action.

This court previously granted in part and denied in part a motion to dismiss several of the causes of action set forth in the amended complaint.  See Lenhard v. Dinallo, No. 1:08-cv-0165, 2009 WL 890596 (N.D.N.Y. Mar. 31, 2009).  See also Dkt. No. 25.  Presently remaining for adjudication are (1) Plaintiffs' claim for false arrest against all Defendants pursuant to the Fourth Amendment as well as the New York State constitution and common law; and (2) Plaintiffs' claim for malicious prosecution against D'Angelo and Ralph pursuant to New York common law.

Familiarity with the facts and procedural history of this case is presumed.  See Lenhard, 2009 WL 890596, at *1-3.  Following, those facts and any additional facts taken from the parties' submissions on the pending motion are discussed only as necessary to clarify this court's findings.

## III.  Discussion

### A.  Summary Judgment Standard

A motion for summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a).  The movant has the initial burden to show why it is entitled to summary judgment.  See Salahuddin v. Goord, 467 F.3d 263, 272 (2d Cir. 2006) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S. Ct. 2548 (1986)).  If the movant meets its burden, the burden shifts to the non-movant to identify evidence in the record that creates a genuine issue of material fact.  See id. at 273 (citing Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586, 106 S. Ct. 1348 (1986)).  A party's factual assertions must be supported by:

> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

FED. R. CIV. P. 56(c)(1).

When deciding whether a material issue of fact is in dispute, the court is cognizant that "[a] fact is material when it might affect the outcome of the suit under governing law." Tracy v. Freshwater, 623 F.3d 90, 95 (2d Cir. 2010) (internal citation omitted).  Also, a material fact is genuinely in dispute "if 'the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" Bessemer Trust Co., N.A. v. Branin, 618 F.3d 76, 85 (2d Cir. 2010) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S. Ct. 2505,

2510 (1986)).

"In ruling on a motion for summary judgment, the district court may rely on any material that would be admissible or usable at trial." Major League Baseball Props., Inc. v. Salvino, Inc., 542 F.3d 290, 309 (2d Cir. 2008) (internal quotation and citation omitted). When deciding a motion for summary judgment, the court must resolve all ambiguities and draw all reasonable inferences in the non-movant's favor. Vt. Teddy Bear Co., Inc. v. 1-800 Beargram Co., 373 F.3d 241, 244 (2d Cir. 2004) (citing Adickes v. S. H. Kress & Co., 398 U.S. 144, 157, 90 S. Ct. 1598 (1970)). However, a properly supported summary judgment motion "will not be defeated merely upon a 'metaphysical doubt' concerning the facts . . . or on the basis of conjecture or surmise." Bryant v. Maffucci, 923 F.2d 979, 982 (2d Cir. 1991) (quoting Matsushita Elec. Indus. Co., 475 U.S. at 586)).

### B. 42 U.S.C. § 1983 Generally

In order to establish a claim pursuant to 42 U.S.C. § 1983, a plaintiff must show "(1) that some person has deprived him of a federal right, and (2) that the person who has deprived him of that right acted under color of state . . . law." Velez v. Levy, 401 F.3d 75, 84 (2d Cir. 2005) (quoting Gomez v. Toledo, 446 U.S. 635, 640, 100 S. Ct. 1920 (1980) (internal quotations omitted)). "Section 1983 is not itself a source of substantive rights[,] but merely provides a method for vindicating federal rights elsewhere conferred[.]" Patterson v. County of Oneida, 375 F.3d 206, 225 (2d Cir. 2004) (quoting Baker v. McCollan, 443 U.S. 137, 144 n.3, 99 S. Ct. 2689 (1979)).

To establish a § 1983 claim against a government official in his individual capacity, a plaintiff need only "show that the official, acting under color of state law, caused the deprivation of a federal right." Hafer v. Melo, 502 U.S. 21, 25,

4

112 S. Ct. 358, 362 (1991) (quoting Kentucky v. Graham, 473 U.S. 159, 166, 105 S. Ct. 3099, 3105 (1985)).  The government official, for his part, may assert the personal immunity defense of qualified immunity.  See id.

In this case, it is undisputable that Defendants were acting under color of state law when they took the alleged unconstitutional actions.

### *1.  Dinallo's Personal Involvement*[1]

A prerequisite to an award of damages on a § 1983 claim against an individual is the personal involvement of the individual in the alleged unconstitutional deprivation.  See Farrell v. Burke, 449 F.3d 470, 484 (2d Cir. 2006) (citations omitted).  To prevail, the plaintiff must show some tangible connection between the alleged unlawful conduct and the defendant.  See Bass v. Jackson, 790 F.2d 260, 263 (2d Cir. 1986).  Where a defendant is a supervisory official, as is Dinallo here, a mere "linkage" to the unlawful conduct through "the prison chain of command" (i.e., under the doctrine of respondeat superior) is insufficient to show his personal involvement in that unlawful conduct.  Polk County v. Dodson, 454 U.S. 312, 325, 102 S. Ct. 445 (1981).  See also Richardson v. Goord, 347 F.3d 431, 435 (2d Cir. 2003).  A plaintiff may establish the personal involvement of a supervisor by showing that the supervisor

> (1) directly participated in the violation, (2) failed to remedy the violation after being informed of it by report or appeal, (3) created a policy or custom under which the violation occurred, (4) was grossly negligent in supervising subordinates who committed the violation, or (5) was deliberately indifferent to the rights of others by failing to

---

[1] All claims initially pled against Dinallo have been dismissed except for Plaintiffs' § 1983 cause of action predicated on the alleged violation of their Fourth Amendment right to be free from unreasonable seizures.

> act on information that constitutional rights were being
> violated.

Iqbal v. Hasty, 490 F.3d 143, 152-53 (2d Cir. 2007) (citing Colon v. Coughlin, 58

F.3d 865, 873 (2d Cir.1995)) (rev'd on other grounds, Ashcroft v. Iqbal, ___ U.S.

___, 129 S. Ct. 1937 (2009)).

Here, Dinallo states by sworn declaration that he "had no personal

involvement in the investigation or prosecution of the [P]laintiffs," and that he

"had no direct supervision over . . . D'Angelo or . . . Ralph."  Decl. of Eric R.

Dinallo, Oct. 21, 2010, at ¶ 4, Dkt. No. 48-6 ("Dinallo Decl.").  In opposing

Defendants' motion for summary judgment, Plaintiffs argue that Dinallo, in his

capacity as "acting Superintendent of [NYSID] at the time of the investigation, . . .

was [NYSID's] chief administrator and responsible for the general workings of the

entire department."  Pls.' Resp. to Defs.' Statement of Material Facts, at ¶¶ 59, 61.

Dkt. No. 50-4 ("Pls.' SOMF").  Plaintiffs, however, do not cite to anything in the

record to support this proposition.  But even if the proposition were true, it is

nothing more than an attempt to premise Dinallo's liability under the doctrine of

respondeat superior.  This court previously rejected an earlier attempt by Plaintiffs

to premise Dinallo's liability under the doctrine of respondeat superior because

respondeat superior is not a basis for liability under § 1983.  See Lenhard, 2009

WL 890596, at *7.

Rather than citing to any admissible evidence in the record to show

Dinallo's personal involvement, Plaintiffs argue that Dinallo has not been deposed

and claim that they are "entitled to further discovery on the issue of . . . Dinallo's

personal involvement."  Pls.' SOMF ¶¶ 59, 61.  On April 2, 2010, the Honorable

Randolph F. Treece, United States Magistrate Judge, amended the scheduling order

by setting a new discovery deadline as September 15, 2010, and the final day to file dispositive motions as October 22, 2010. <u>See</u> Dkt. No. 43.[2]  Judge Treece's Order also stated that "no further extensions will be considered without a showing of extraordinary circumstances." <u>Id.</u>[3]  Dennis B. Schlenker, who replaced James D. Linnan as counsel for Plaintiffs, filed his Notice of Appearance on April 7, 2010. <u>See</u> Dkt. No. 44.  Therefore, Plaintiffs had over five months—from Mr. Schlenker's appearance on April 7, 2010, to the expiration of discovery period on September 22, 2010—to depose Dinallo.  Plaintiffs did not do so even though they deposed Ralph and D'Angelo within that time. <u>See</u> Dkt. Nos. 48-2 and 48-3.  Plaintiffs have not provided any reasons for their failure to depose Dinallo before the expiration of the discovery period.  They did not seek to extend the discovery period before it expired.  Further, Plaintiffs have not shown any extraordinary circumstances to warrant reopening discovery at this point in the litigation.  As such, Plaintiffs are not entitled to further discovery.[4]

  Dinallo met his initial burden by stating in a sworn declaration that he had

---

[2]  The original discovery deadline was March 15, 2010, and the original deadline for filing motions was April 30, 2010. <u>See</u> Dkt. No. 30.  These deadlines were extended after Dennis B. Schlenker replaced James D. Linnan as counsel to Plaintiffs. <u>See</u> Dkt. Nos. 42-44.

[3]  <u>See also</u> N.D.N.Y. L.R. 16.2 ("The 'discovery cut-off' is the date . . . by which all depositions shall be concluded," and "[d]iscovery requests that call for . . . scheduled depositions after the discovery cut-off will not be enforceable except by order of the Court for good cause shown.").

[4]  The Court might have been more willing to reopen discovery had Plaintiffs moved to do so earlier or proffered a compelling reason to do so now.  Under the Court's Local Rules, "[p]arties shall file and serve motions to compel discovery [within two weeks of] the discovery cut-off." N.D.N.Y. L.R. 16.2.  Plaintiffs' SOMF, which is the only document by Plaintiffs that requests further discovery, was filed on November 29, 2010, nearly ten weeks after the September 22, 2010, discovery cut-off date. <u>See</u> Dkt. No. 50-4.

no personal involvement in the alleged unconstitutional conduct.  Thus, the burden shifted to Plaintiffs to provide admissible evidence to raise a question of material fact on the issue.  By failing to provide any admissible evidence to dispute Dinallo's assertion, Plaintiffs have failed to show that there are any genuine issues of material fact on Dinallo's personal involvement in the alleged unconstitutional actions.

Accordingly, Defendants' motion for summary judgment regarding the sole claim against Dinallo is **granted**.

### 2.  *Fourth Amendment and State Law False Arrest Claims*

Plaintiffs assert a § 1983 claim for violation of their right to be free from unreasonable seizures under the Fourth Amendment as well as a false arrest claim under the New York State constitution and common law stemming from their arrest at Albany International Airport on March 23, 2007.  In this Circuit, both claims are analyzed under the same standard.  A § 1983 claim for false arrest and imprisonment derives from the "Fourth Amendment right to remain free from unreasonable seizures, which includes the right to remain free from arrest without probable cause.  In analyzing a § 1983 claim for unconstitutional false arrest, [the Second Circuit has] generally looked to the law of the state in which the arrest occurred." Jaegly v. Couch, 439 F.3d 149, 152 (2d Cir. 2006) (internal citations and quotations omitted).  "[T]o establish a claim for false arrest and/or imprisonment under [federal] and New York law, a plaintiff must show that the defendant intentionally confined him without his consent and without justification."  Swindell v. New York Dept. of Envtl. Conservation, 371 F. Supp. 2d 172, 179 (N.D.N.Y. 2005).

### a.  *Confinement*

8

"[C]onfinement arises when a person unlawfully obstructs or deprives another of his freedom to choose his own location." Villacorta v. Saks Inc., — N.Y.S.2d —,32 Misc.3d 1203(A) (N.Y. Sup. Ct. 2011) (quoting Broughton v. New York, 335 N.E.2d 310, 314, 37 N.Y.2d 451, 456, 373 N.Y.S.2d 87 (1975), cert. denied, Schanbarger v. Kellogg, 423 U.S. 929, 96 S.Ct. 277 (1975)).

Here, D'Angelo and Ralph each submit that they "did not restrict or limit [Plaintiffs'] movement in any way" while at the airport on March 23, 2007. Decl. of Philip D'Angelo, Oct. 18, 2010, ¶ 4, Dkt. No. 48-5 ("D'Angelo Decl."); Decl. of Sean Ralph, Oct. 18, 2010, ¶ 3, Dkt. No. 48-7 ("Ralph Decl."). Both Ralph and D'Angelo claim that they "reasonably believed that [Plaintiffs] consented to speaking with" them. D'Angelo Decl., ¶ 5; Ralph Decl., ¶ 5. Plaintiffs, however, testified at their depositions that they were ordered by Defendants to accompany them to another room without cause or explanation. See Dep. of Patrick Lenhard, Nov. 6, 2009, 36-37, Dkt. No. 48-2 ("P. Lenhard Dep."), at Ex. A to Aff. of Adrienne J. Kerwin, Oct. 22, 2010, Dkt. No. 48-1 ("Kerwin Aff."); Dep. of Ann Lenhard, Nov. 6, 2009, 30-33, Dkt. No. 48-2 (A. Lenhard Dep."), at Ex. B to Kerwin Aff.

Accordingly, there are issues of fact on whether Defendants intentionally confined Plaintiffs without their consent on March 23, 2007.

### *b. Probable Cause*

Assuming that Plaintiffs were confined without their consent on March 23, 2007, Defendants are still entitled to summary judgment if probable cause existed to arrest Plaintiffs. See Bernard v. United States, 25 F.3d 98, 102 (2d Cir. 1994) ("There can be no federal civil rights claim for false arrest where the arresting officer had probable cause."); Swindell, 371 F. Supp. 2d at 179 ("Probable cause is

a justification for, and a complete defense to, a claim for false arrest and imprisonment under both [federal] and New York law.")

"Whether probable cause exists depends upon the reasonable conclusion to be drawn from the facts known to the arresting officer at the time of arrest." Devenpeck v. Alford, 543 U.S. 146, 152, 125 S. Ct. 588 (2004). "When an arrest is made pursuant to a facially valid warrant, there is a presumption that it was made with probable cause which 'can be rebutted only by a showing of fraud, perjury, or the misrepresentation or falsification of evidence.'" Garenani v. County of Clinton, 552 F. Supp. 2d 328, 333 (N.D.N.Y. 2008) (quoting Martinetti v. Town of New Hartford Police Dep't, 112 F. Supp. 2d 251, 252-53 (N.D.N.Y. 2000) (internal quotation marks omitted)); see also Walczyk v. Rio, 496 F.3d 139, 155-156 (2d Cir. 2007) ("[A]n arrest or search pursuant to a warrant issued by a neutral magistrate is presumed reasonable because such warrants may issue only upon a showing of probable cause); Rivera v. United States, 928 F.2d 592, 602 (2d Cir. 1991) ("A plaintiff who argues that a warrant was issued on less than probable cause faces a heavy burden.").

On October 24, 2006, Justice Francis J. Peryea of the Town Court of Altona, New York, issued arrest warrants for Plaintiffs after D'Angelo filed accusatory instruments against Plaintiffs charging them with Insurance Fraud in the Second Degree in violation of New York Penal Law § 176.25; Grand Larceny in the Second Degree in violation of New York Penal Law §§ 110.00, 155.40(1); and Falsifying Business Records in the First Degree in violation of New York Penal Law § 175.10.  See Exs. E and F to Kerwin Aff., Dkt. No. 48-3.  Defendants argue that they had probable cause to arrest Plaintiffs because the purported arrests were made pursuant to the warrants issued by Justice Peryea.  See Ralph Dep. at 205-06;

D'Angelo Dep. at 72-73.  Although Defendants did not have the arrest warrant with them when they went to the airport, Ralph testified that he called the New York State Police, who verified that there were active arrest warrants for Plaintiffs. See Ralph Dep. at 206.

Plaintiffs contend that there is an issue of fact regarding whether the warrants were valid.  See Pls.' Mem. of Law, at 11, Dkt. No. 50-2; Pls.' SOMF ¶ 35.  Plaintiffs argue that the Amended Complaint "sets forth facts" to show that the warrant is facially invalid.  Pls.' Mem. of Law, at 12.  Because the Amended Complaint is not a verified pleading based on Plaintiffs' personal knowledge, it is not admissible evidence and therefore, is not deemed part of the record for purposes of a motion for summary judgment.[5]

Plaintiffs further claim that the "inconsistent statements outlined in an [independent investigative report] were not made known or submitted" to Justice

---

[5] Generally, a party opposing a summary judgment motion may not rely on the allegations contained in his complaint to oppose the motion.  Belpasso v. Port Auth. of N.Y. & N.J., 400 F. App'x 600, 601 (2d Cir. 2010) (citing Champion v. Artuz, 76 F.3d 483, 485 (2d Cir. 1996)).  Under certain circumstances a verified complaint may be "treated as an affidavit," and will be considered in determining whether material issues of fact exist . . . ."  Coughlin, 58 F.3d at 872.  To be treated as an affidavit, the verified complaint must, among other things, be based on "personal knowledge."  FED. R. CIV. P. 56(c)(4) ("An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated.").  An affidavit (or verified complaint) is not based on personal knowledge if, for example, it is based on mere "information and belief" or hearsay.  Patterson, 375 F.3d at 219; Sellers v. M.C. Floor Crafters, Inc., 842 F.2d 639, 643 (2d Cir. 1988); Applegate v. Top Assoc., Inc., 425 F.2d 92, 97 (2d Cir. 1970).

Plaintiffs' Amended Complaint was signed by James D. Linnan, Plaintiffs' original counsel, and not by Plaintiffs themselves.  Moreover, it is based "upon [Mr. Linnan's] information and belief," rather than on the Plaintiffs' personal knowledge.  Id. at 2.  As such, the Court cannot treat the Amended Complaint as an affidavit, and thus, the allegations contained in the Amended Complaint are insufficient to raise an issue of material fact on the facial validity of the arrest warrants.

Peryea.  Pls.' Mem. of Law, at 12.  However, Plaintiffs fail to cite any admissible evidence to support this proposition.

Finally, Plaintiffs rely on Russo v. State of New York, 672 F.2d 1014 (2d Cir. 1982) for the proposition that Defendants are not entitled to the presumption that probable cause existed to arrest Plaintiffs.  See Pls.' Mem. of Law, at 10.  In Russo, the court found that "under New York law, where a warrant is issued by a judge on the basis of the sworn accusations of the defendant in a malicious prosecution action," the rule  that a presumption or probable cause arises where a warrant has been issued following an indictment by a grand jury is inapplicable. See Russo, 672 F.2d at 1018 (citations omitted).  Plaintiffs' reliance on Russo is misplaced because, although the original complaint in Russo included a false arrest claim, the "issues presented on appeal relate[d] *solely to. . . malicious prosecution .* . . ." Russo, 672 F.2d at 1016-17 (emphasis added).  This court has been unable to find any authority applying Russo to false arrest claims.[6]  Thus, Defendants are entitled to a presumption of probable cause to arrest Plaintiffs because Defendants

_____

[6]  Although probable cause is a complete defense to both false arrest and malicious prosecution claims, the existence of probable cause in each claim must be evaluated separately because "the 'probable cause determination relevant to a malicious prosecution claim differs from that relevant to a false arrest claim.'"  Ferlito v. City of Oswego, No. 5:03-CV-96, 2006 WL 2238939, at *10-11 (N.D.N.Y Aug. 4, 2006) (quoting Mejia v. City of New York, 119 F. Supp. 2d 232, 254 (E.D.N.Y. 2000)).  "[I]n a malicious prosecution action, the relevant probable cause determination is whether there was probable cause *to believe the criminal proceeding could succeed and hence, should be commenced.*"  Mejia, 119 F. Supp. 2d at 254 (emphasis added) (citing Posr v. Court Officer Shield No. 207, 180 F.3d 409, 417 (2d Cir. 1999)).  In a false arrest claim, "the question is whether there was probable cause *for the arrest* . . . ."  Id. (emphasis added) (citing Posr, 180 F.3d at 407).  Moreover, "in a malicious prosecution action, the lack of probable cause is an element of the tort that must be pled and proved by the plaintiff."  Id. (citing Broughton v. New York, 335 N.E.2d 310, 314, 37 N.Y.2d 451, 456, 373 N.Y.S.2d 87 (1975), cert. denied, Schanbarger v. Kellogg, 423 U.S. 929, 96 S.Ct. 277 (1975)).  But in a false arrest action, the existence of probable cause is an affirmative defense that must be pled and proved by the defendant.  Broughton, 335 N.E.2d at 314.

acted pursuant to a valid warrant issued by Justice Peryea.  Plaintiffs may rebut this presumption by identifying any admissible evidence in the record which would show that the arrest warrants were procured through fraud, perjury, or the misrepresentation or falsification of evidence, but have failed to do so.

Accordingly, Defendants' motion for summary judgment as to Plaintiffs' § 1983 and state law false arrest claim is **granted**.

### C.  State Malicious Prosecution Claim[7]

In order to prevail in an action for malicious prosecution under New York law, a plaintiff must establish "1) the initiation or continuation of a criminal proceeding against plaintiff; 2) termination of the proceeding in plaintiff's favor; 3) lack of probable cause for commencing the proceeding; and 4) actual malice as a motivation for defendant's actions."  Manganiello v. City of New York, 612 F.3d 149, 161 (2d Cir. 2010) (internal citations and quotation marks omitted).  There must also "be a post-arraignment seizure for a § 1983 malicious prosecution

---

[7] Plaintiffs assert their malicious prosecution claim under New York law only.  See generally Dkt. No. 19.  The court, in this decision and order, has dismissed the § 1983 claim against all Defendants.  Generally, where "all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine—judicial economy, convenience, fairness, and comity—will point to declining to exercise jurisdiction over the remaining state law claims."  Valencia ex. rel. Franco v. Lee, 316 F.3d 299, 305 (2d Cir. 2003) (quoting Carnegie-Mellon Univ. v. Cohill, 484 U.S. 343, 350 n.7, 108 S. Ct. 614 (1988)).  But when "the dismissal of the federal claim occurs 'late in the action, after there has been substantial expenditure in time, effort, and money in preparing the dependent claims, knocking them down with a belated rejection of supplemental jurisdiction may not be fair. Nor is it by any means necessary.'"  Purgess v. Sharrock, 33 F.3d 134, 138 (2d Cir. 1994) (quoting 28 U.S.C.A. § 1367, Practice Commentary at 835 (1993)).  Here, the Amended Complaint was filed over three years ago, and the summary judgment motion was made almost one year ago.  There has been significant discovery in the form of four depositions and a review of record evidence.  Accordingly, in the interest of fairness to the parties, the court will exercise supplemental jurisdiction over the state malicious prosecution claim, and consider the merits of the parties' arguments.

claim."  Jocks v. Tavernier, 316 F.3d 128, 136 (2d Cir. 2003).

Here, it is not in dispute that criminal proceedings were initiated against Plaintiffs as D'Angelo filed felony complaints against Plaintiffs.[8]  See Ex. F to Kerwin Aff.  Defendants also concede that there has been a post-arraignment seizure.  See Defs.' Mem. of Law, at 11, Dkt. No. 48-8 .  Defendants further acknowledge that there is a disagreement about the manner in which the criminal proceeding was terminated.  See id.[9]  Despite these issues, Defendants argue that they are entitled to summary judgment because there was probable cause to commence the criminal proceedings and because they did not act with malice.

---

[8]  In New York, "[a] criminal action is commenced by the filing of an accusatory instrument with a criminal court . . . ."  N.Y. CRIM. PROC. LAW § 100.05.  Although the accusatory instruments are entitled "Information/Complaint," Dkt. No. 126-28, the court concludes that accusatory instruments are felony complaints regardless of the title on the documents because the crimes Plaintiffs are accused of committing are all felonies.  "An 'information' is a verified written accusation by a person, filed with a local criminal court, charging one or more other persons with the commission of one or more offenses, none of which is a felony."  N.Y. CRIM. PROC. LAW § 100.10(1).  "A 'felony complaint' is a verified written accusation by a person, filed with a local criminal court, charging one or more other persons with the commission of one or more felonies."  Id. § 100.10(5)

[9]  Defendants submit that the proceedings were terminated with an adjournment in contemplation of dismissal ("ACD") in accordance with New York Penal Law § 170.55.  See Ralph Dep., at 214-15; D'Angelo Dep., at 67-68.  An adjournment in contemplation of dismissal is not considered a favorable termination for malicious prosecution purposes because such adjournments do not "indicate the innocence of the accused," Murphy v. Lynn, 118 F.3d 938, 948 (2d Cir. 1997), and such adjournments do not preclude further prosecution, see Hollender v. Trump Vill. Coop., Inc., 448 N.E.2d 432, 433, 58 N.Y.2d 420, 461 N.Y.S.2d 765 (1983).  Plaintiffs contend that the criminal proceedings "ended in an outright dismissal of the charges, a termination of the proceedings in [Plaintiffs'] favor."  Pls.' Mem. of Law, at 12.  Plaintiffs fail to support this assertion with any record evidence, and also fail to contradict Defendants' assertion that the criminal proceedings against them were terminated with an ACD.  This alone would warrant summary judgment in favor of Defendants on the malicious prosecution claim.  Nonetheless, in an abundance of caution, the court will address the remaining elements of Plaintiffs' malicious prosecution claim.

These two issues will be addressed in turn.

### *1.  Probable Cause*

The presence of probable cause to commence a criminal proceeding "is an essential element of a claim for malicious prosecution."  McClellan v. Smith, 439 F.3d 137, 145 (2d Cir. 2006).  There is a presumption of probable cause to commence a criminal proceeding where "a warrant has been issued following an indictment by a grand jury . . . ."  Russo, 672 F.2d at 1018 (citation omitted).  But where "the warrant is issued by a judge on the basis of the sworn accusations of the defendant in the malicious prosecution action," as is in this case, the presumption does not exist.  Id. (citations omitted).  As such, the court will evaluate whether D'Angelo had probable cause to file the complaints that commenced the criminal proceeding against Plaintiffs.

"Probable cause, in the context of malicious prosecution, has . . . been described as such facts and circumstances as would lead a reasonably prudent person to believe the plaintiff guilty."  Boyd v. City of New York, 336 F.3d 72, 76 (2d Cir. 2003) (citing Colon v. City of New York, 455 N.E.2d 1248, 1250, 60 N.Y.2d 78, 468 N.Y.S.2d 453 (1983) (footnote omitted)); see also Rounseville v. Zahl, 13 F.3d 625, 629 (2d Cir. 1994) ("In the context of a malicious prosecution claim, probable cause under New York law is the knowledge of facts, actual or apparent, strong enough to justify a reasonable man in the belief that he has lawful grounds for prosecuting the defendant in the manner complained of.").  "The existence of probable cause must be determined as of the time the prosecution was initiated . . . on the basis of the facts then known to the defendant or which he reasonably believed from appearances to be true . . . ."  Loeb v. Teitelbaum, 432 N.Y.S.2d 487, 494-95, 77 A.D.2d 92 (App. Div. 1980).  "The question of whether

or not probable cause existed may be determinable as a matter of law if there is no dispute as to the pertinent events and the knowledge of the officers . . . ."  Weyant v. Okst,  101 F.3d 845, 852 (2d Cir. 1996) (citations omitted).

      The felony complaints against Plaintiffs accused them of Insurance Fraud in the Second Degree in violation of New York Penal Law § 176.25,[10] Attempted Grand Larceny in the Second Degree in violation of New York Penal Law §§ 110.00, 155.40(1),[11] and Falsifying Business Records in the First Degree in violation of New York Penal Law § 175.10.[12]  See Ex. F to Kerwin Aff.

---

    [10]  "A person is guilty of insurance fraud in the second degree when he commits a fraudulent insurance act and thereby wrongfully takes, obtains or withholds, or attempts to wrongfully take, obtain or withhold property with a value in excess of fifty thousand dollars."  N.Y. PENAL LAW § 176.25.

> A fraudulent insurance act is committed by any person who, knowingly and with intent to defraud presents, causes to be presented, or prepares with knowledge or belief that it will be presented to or by an insurer, . . . or any agent thereof . . . any written statement as part of, or in support of,  . . . a claim for payment or other benefit pursuant to an insurance policy . . . that he or she knows to . . . contain materially false information concerning any fact material thereto . . . to conceal, for the purpose of misleading, information concerning any fact material thereto[.]

N.Y. PENAL LAW § 176.05.

    [11]  In New York, "[a] person is guilty of an attempt to commit a crime when, with intent to commit a crime, he engages in conduct which tends to effect the commission of such crime."  N.Y. PENAL LAW § 110.00.  "A person is guilty of grand larceny in the second degree when he steals property and when . . . [t]he value of the property exceeds fifty thousand dollars[.]"  N.Y. PENAL LAW § 155.40(1).

    [12]  "A person is guilty of falsifying business records in the first degree when he commits the crime of falsifying business records in the second degree, and when his intent to defraud includes an intent to commit another crime or to aid or conceal the commission thereof."  N.Y. PENAL LAW § 175.10.

D'Angelo began investigating Plaintiffs' insurance claim in January 2005. He states that he was instructed to read the documents contained in the investigative file.  See D'Angelo Dep., at 10.  Although D'Angelo does not remember reviewing every document, items in the file relevant to the insurance fraud claim include a referral for investigation from the Genesee Patrons Insurance Company ("Genesee"); several proofs of loss; an inventory list; auction records; witness statements; transcripts of deposition testimony given by witnesses; a report ("Ryan Report") from Michael J. Ryan ("Ryan"), an insurance adjuster from Innovative Claims Investigators, Inc. who was hired by Genesee; the report of a public adjuster who was tasked by Genesee to assist with processing Plaintiffs' claim; an inventory list of items that Plaintiffs moved to Hawaii provided by Kenwood Moving & Storage; and an initial list of household contents lost in a fire prepared by Ann Lenhard.  Id. at 11, 13-14, 19-20, 22, 33-34, 38, 44-45, 84-86;

---

> A person is guilty of falsifying business records in the second degree when, with intent to defraud, he:
>
> 1. Makes or causes a false entry in the business records of an enterprise; or
>
> 2. Alters, erases, obliterates, deletes, removes or destroys a true entry in the business records of an enterprise; or
>
> 3. Omits to make a true entry in the business records of an enterprise in violation of a duty to do so which he knows to be imposed upon him by law or by the nature of his position; or
>
> 4. Prevents the making of a true entry or causes the omission thereof in the business records of an enterprise.

N.Y. PENAL LAW § 175.05.

Exs. G and M to Kerwin Aff.

D'Angelo reviewed the Ryan Report, which was prepared in October 2001, as a part of his investigation.  See D'Angelo Dep., at 23-24.  Ryan spoke with Plaintiffs' listing agent, Bonnie Tyo, who "inspected the home approximately five days before [the fire] and noted that there were very few contents in the home," and that "there were some tools and other items in the garage which was attached to the residence."  Ex. L to Kerwin Aff.

Additionally, the Ryan Report indicated that Plaintiffs' second list of contents accompanying Plaintiffs' proof of loss "does not concur with the initial interviews, signed statement and recorded statement secured from [Ann] Lenhard on February 12, 2001, and March 12, 2001."  Id.  The February 12, 2001 statement noted that the items in the house included air mattresses, some chairs, and sleeping bags, and that the items in the garage included tools, air compressors, and a safe. Id.  According to the Ryan Report, Ann Lenhard stated "that there was very little contents in the home and garage and the contents claim would be minimal."  Id.  In the March 12, 2001 statement, Mrs. Lenhard "again advised that there were minimal contents in the house and the garage as she had sold many items out of the garage . . . ."  Id.  The first list of contents, submitted on or around February 20, 2001, included a telescope, an air mattress, a sleeping bag, a ladder, two ladderback chairs, a clawfoot tub, a statue, a buffalo head, an area rug, an antique cookstove, a generator, a 7-foot bin with nuts and bolts, a safe, two circular saws, metal clamps, a drill bit kit, a chain saw, grease guns, and a kerosene heater.  See id.  See also Ex. M to Kerwin Aff.  Although the first list enumerated only twenty items on a single page with a total value of $5,884.00, the second list enumerated 194 items on eight pages with a total value of $56,088.  See Ex. L to Kerwin Aff.

18

See also Exs. I and M to Kerwin Aff.

The Ryan Report further noted that the items enumerated on the second contents list was "inconsistent with the items and debris [Ryan and his team ] found at the site during [their] original inspection on February 12, 2001." Ex. L to Kerwin Aff.  Additionally, Cause and Origin Investigator Bill Vielhauer of Fire Scene Investigations told Ryan "that there was no evidence of the remains for the larger tools and several of the other items listed on the" second contents list.  Id.

As described in the Ryan Report, Ryan also interviewed a number of individuals throughout his investigation.  One individual, Eric Monty, told Ryan that he "purchased the large, exterior woodburning [*sic*] stove/heating system from Ann Lenhard after the house had burned" down.  Id.  Keith Defayette, owner of Kenwood Moving and Storage ("Kenwood"), told Ryan that Ann Lenhard hired Kenwood to move personal items to Hawaii.  See id.  Ryan reviewed a general list of items that were moved by Kenwood.  See id.  Those items included wood flooring, boxes, an armoire, tool boxes, a work bench, power tools, a grandfather clock, a Hoosier cabinet, a welding unit, a generator, a skidster, a spinning wheel, eight saddles, thirteen guns, a bed, a dresser, and three buffalo heads.  See id.

Another individual, Jim Manor ("Manor"), said that Plaintiffs were selling items out of the garage and that they had put up items for sale at Bridge Street Auction House ("Bridge Street").  See id.  Manor said that he had purchased lumber from Plaintiffs before the fire.  See id.  He added that ninety percent of the items in the garage were sold prior to the fire.  See id.  D'Angelo also interviewed Manor after the case was assigned to D'Angelo.  See Ex. G to Kerwin Aff.  In this interview, Manor reiterated that he had purchased lumber from Plaintiffs and that they sold items out of the house before the fire.  See id.

The Ryan Report also noted that Jody Speer ("Speer") bought items from Plaintiffs before the fire.  See Ex. L to Kerwin Aff.  Ryan obtained the "identification and serial number of each item purchased from [Plaintiffs] by [Speer] . . . ."  Id.  See also Ex. N to Kerwin Aff.  Those items included a Delta drill press, a Craftsman twelve-inch band saw, a Delta twelve-inch portable planer, a Delta router table, a skill or "chop" saw, and a six-inch joiner.  See id.  On the second contents list, Plaintiffs claim they lost the following items: a router able, a twelve-inch Delta planer, a standing drill press, a band saw, and a chop saw.  See Exs. I and L to Kerwin Aff.  Ryan also believed that the router that Speer bought from Plaintiffs was the same one that was listed on the second contents list.  See Ex. L to Kerwin Aff.  D'Angelo attempted to interview Speer in January 2005, but Speer was not at home when D'Angelo and his investigators went to his residence.  See Ex. G to Kerwin Aff.  When  D'Angelo checked the garage "to see if [Speer] was there[,] [the team] noted that [Speer] still ha[d] possession of the tools he bought from" Plaintiffs."  Id.

In addition to reviewing the Ryan Report, D'Angelo states that he obtained the records from Kenwood and Bridge Street.  See D'Angelo Dep., at 86; Ex. G to Kerwin Aff.  Defendants assert that a review of those records led D'Angelo to believe that Plaintiffs listed items on their contents lists that were actually sent to Hawaii or auctioned off before the fire.  See Defs.' Mem. of Law, at 5.

Finally, D'Angelo states that he did not reach the conclusion that there was probable cause to commence the criminal proceeding on his own.  There came a time in 2005 when he thought that there was legally sufficient evidence to file a criminal complaint.  See D'Angelo Dep. , at 47-48.  Thereafter, he called Clinton County Assistant District Attorney Joe Lavorando ("Lavorando") who told

D'Angelo to send a letter describing the case.  Id., at 52.  In a subsequent phone conversation, Lavorando told D'Angelo that the District Attorney's Office could prosecute the case and requested that D'Angelo contact the New York State Police to review the case.  Id., at 52-53.  See also Ex. G to Kerwin Aff.  Several months later, in March 2006, D'Angelo; Tim Morris ("Morris"), an investigator with the New York State Police; and other investigators met with Clinton Count District Attorney Michael J. Wylie.  See Ralph Dep., at 192; Dkt. Ex. G to Kerwin Aff. They all concluded that a felony complaint could be prepared against Ann Lenhard for Insurance Fraud in the Third Degree.[13]  See Ex. G to Kerwin Aff.  Six months later, in June 2006, Ralph and D'Angelo met with Wylie who "advised [them] to file charges in Altona Town Justice Court and then obtain a warrant."  Id. at 134.

In opposing Defendants' summary judgment motion, Plaintiffs make a number of factual assertions but fail to provide any record evidence to support them.  For example, Plaintiffs argue that "Lavorando, as a reasonably prudent person, knew that there was not sufficient evidence to bring any prosecution in this matter, and instructed [D'Angelo] to have the investigative file reviewed by the New York State Police[,] [an] instruction [that] was not heeded by" D'Angelo.

---

[13]  Although it is unknown if the meeting between Ralph, D'Angelo, and Wylie included a discussion about Patrick Lenhard's involvement in the alleged fraud, it was reasonable to file charges against Mr. Lenhard as he signed the proof of loss statements too.  See Exs. I and K to Kerwin Aff.; P. Lenhard Dep., at 52-53.  Additionally, it is immaterial that Plaintiffs were ultimately charged with Insurance Fraud in the Second Degree instead of Insurance Fraud in the Third Degree.  In New York, "[a] person is guilty of insurance fraud in the third degree when he commits a fraudulent insurance act and thereby wrongfully takes, obtains or withholds, or attempts to wrongfully take, obtain or withhold property with a value in excess of three thousand dollars."  N.Y. PENAL LAW § 176.20.  The total value claimed by Plaintiffs on their November 19, 2001, Proof of Loss was $57,758.12.  See Ex. J to Kerwin Aff.  Wrongfully claiming an amount exceeding $50,000 satisfies the elements of Insurance Fraud in the Second Degree.  See N.Y. PENAL LAW § 176.25.

Defs.' Mem. of Law, at 17.  The record, however, indicates that D'Angelo contacted Morris following the meeting with Lavorando.  See Ex. G to Kerwin Aff. Plaintiffs have not provided any evidence to dispute this factual assertion. Plaintiffs also fail to provide any evidence to support their assertion on Lavorando's state of mind, and their speculation alone is insufficient to raise an issue of material fact.

Additionally, it appears that Plaintiffs are disputing the sufficiency of D'Angelo's investigation by arguing that D'Angelo did not meet with Ryan before commencing the investigation, and that D'Angelo did not know where Ryan's office was located, if Ryan had an office, or if Ryan were licensed or certified in New York.  See Pls.' Additional SOMF, ¶ 2, Dkt. No. 50-3.  Plaintiffs, however, do not state why such information is relevant to D'Angelo's probable cause determination, especially where the Ryan Report showed Ryan's employer, office address, and title.  See generally Ex. L to Kerwin Aff.  Moreover, it is immaterial that D'Angelo did not meet with Ryan before D'Angelo became involved in the investigation.  The probable cause requirement is satisfied if the officer 'received his information from some person, normally the putative victim *or eyewitness*, who it seems reasonable to believe is telling the truth . . . ."  Miloslavsky v. AES Eng'g Soc'y, Inc., 808 F. Supp. 351, 355 (S.D.N.Y. 1992) (emphasis added), aff'd 993 F.2d 1534 (2d Cir. 1993).  Plaintiffs have not produced any evidence raising an issue of fact regarding Ryan's credibility.

Other factual allegations made by Plaintiffs attacking the sufficiency of the investigation include D'Angelo's failure to contact the public adjuster that Plaintiffs hired or to visit the scene of the fire, and D'Angelo's reliance on the Ryan Report and Speer's affidavit.  See Pls.' Additional SOMF, ¶¶ 3, 16, 33.

22

These allegations, even if true, are insufficient to raise an issue of fact on whether there was probable cause to commence the proceeding.  See Murray v. UPS, 614 F. Supp. 2d 437, 444 (S.D.N.Y. 2009) ("[T]he standard for establishing probable cause is not a particularly stringent one," and "does not require proof beyond a reasonable doubt; it is the mere probability of criminal activity, based on the totality of the circumstances.") (internal quotations and citations omitted).

Even when the totality of circumstances are viewed in the light most favorable to Plaintiffs, it was reasonable for Defendants to find probable cause that Plaintiffs were guilty of committing the crimes of which they were ultimately charged.  The inconsistencies between Ann Lenhard's statements and the various contents lists, the information obtained from interviewing the witnesses, and a review of investigative records could lead a reasonable person to believe that Plaintiffs intentionally and knowingly submitted proofs of loss and contents lists to Genesee that contained false information in an attempt to claim money in excess of $50,000, in violation New York Penal Law § 176.25 (Insurance Fraud in the Second Degree) and Penal Law §§ 110.00, 155.40(1) (Attempted Grand Larceny in the Second Degree).  Likewise, it reasonable for a prudent person to believe that Plaintiffs attempted to defraud Genesee by intentionally submitting proofs of loss and contents lists that contained false information in violation of New York Penal Law § 175.10 (Falsifying Business Records in the First Degree).  Because Defendants had probable cause to commence the proceeding, Plaintiffs' malicious prosecution claim fails as a matter of law.  While this conclusion alone warrants summary judgment in favor of Defendants on Plaintiffs' malicious prosecution claim, the court will nonetheless address the remaining element of that claim.

### *2.  Malice*

23

Plaintiffs have also failed to raise an issue of fact on whether Defendants acted with malice. The Second Circuit defines malice for purposes of a malicious prosecution claim as "wrong or improper motive, something other than a desire to see the ends of justice served." Lowth v. Town of Cheektowaga, 82 F.3d 563, 573 (2d Cir. 1996) (quoting Nardelli v. Stamberg, 377 N.E.2d 975, 976, 44 N.Y.2d 500, 406 N.Y.S.2d 443 (N.Y. 1978)). "In most cases, the lack of probable cause—while not dispositive—'tends to show that the accuser did not believe in the guilt of the accused, and malice may be inferred from the lack of probable cause.'" Id. at 573 (quoting Conkey v. State, 427 N.Y.S.2d 330, 332, 74 A.D.2d 998 (App. Div. 1980)). Here, as discussed above, probable cause to initiate the proceeding was not "'so totally lacking' [that] malice [may] reasonably be inferred." Sulkowska v. City of New York, 129 F. Supp. 2d 274, 295 (S.D.N.Y. 2001) (quoting Martin v. City of Albany, 364 N.E.2d 1304, 1307, 42 N.Y.2d 13, 396 N.Y.S.2d 612 (N.Y. 1977)).

Moreover, there is no evidence in the record to suggest that Defendants "had any personal animus toward" Plaintiffs, or that Defendants "acted with 'a reckless or grossly negligent disregard" of Plaintiffs' rights. Donovan v. Briggs, 250 F. Supp. 2d 242, 261 (W.D.N.Y. 2003) (quoting Hernandez v. State, 644 N.Y.S.2d 380, 382, 228 A.D.2d 902 (App. Div. 1996)).

Plaintiffs argue that the Amended Complaint alleges that Defendants "initiated the charges against the Plaintiffs herein in an effort to dissuade or prevent them from prosecuting their civil actions against the Genesee Patrons Cooperative Insurance Company, which was then pending." Pls.' Mem. of Law, at 5. Plaintiffs, however, fail to provide any evidentiary support for that proposition, and they may not base their opposition to summary judgment on allegations in the

unverified Amended Complaint.

Plaintiffs cannot establish all of the elements of their malicious prosecution claim against Defendant.  Accordingly, Defendants's motion for summary judgement on this cause of action is **granted**.[14]

### IV.  Conclusion

In accordance with the foregoing discussion, it is hereby

ORDERED that Defendants' motion for summary judgment, see Dkt. No. 48, is GRANTED.

The Clerk of the Court is directed to close this case accordingly.


IT IS SO ORDERED.



DATED:        September 30, 2011
              Syracuse, New York



_____
Neal P. McCurn
Senior  U.S. District Judge


_____

[14]  In light of the conclusion that Defendants are entitled to summary judgment as to all claims against them, the court need not address the Defendants' asserted defense of qualified immunity.